

HERRICK

NEW YORK
NEWARK
PRINCETON

March 27, 2014

**VIA ECF ONLY**

Hon. Arthur Spatt
United States District Court
100 Federal Plaza
Central Islip, New York 11722

Re: *Chiquita Fresh North America, LLC v. Long Island Banana Corp.*;
Case No. 14-cv-982

Dear Judge Spatt:

We represent defendants Long Island Banana Corp. ("LIB"), Suffolk Banana Co., Inc. ("Suffolk") and Thomas Hoey, Jr. in the action captioned above. We write in opposition to the letter filed late yesterday afternoon by Gregory Brown, Esq., counsel to the plaintiffs in this action.

As set forth below, we strongly oppose the relief requested by Mr. Brown in his letter on several grounds. Moreover, we strongly dissent from the implications in Mr. Brown's letter that there has been any deceitful or improper conduct relating to the sale of 596 Merrick Road, Lynbrook, New York (the "596 Property").

As set forth in the attached affidavit of Yolanda Hoey, who is the acting Chief Executive Officer of LIB, LIB was acquired from its prior owners in 1985 using funds from the partners in the business at the time, members of the Balducci family and the Hoey family. The LIB business was initially operated from the 596 Property. By no later than 1991, LIB moved its operations to its current location at 26 William Street, Lynbrook, New York, and has operated at that site since that time. For more than 25 years, the 596 Property has not been used in any operations of LIB, but rather has been leased to a number of unrelated third-party tenants. It currently stands vacant and is subject to a contract of sale that is scheduled to close on March 27, 2014. This firm is not involved in that closing.

The 596 Property was acquired more than 28 years ago as part of the purchase of the LIB business, using the funds described above, but ownership of the 596 Property has been in the name of Brooke Enterprises, a separate entity now owned by Thomas Hoey, Jr. (So the record is clear, this firm has not at any time represented Brooke Enterprises.) The acquisition of the 596 Property was never funded with any PACA proceeds, and certainly not any proceeds that could possibly be connected to the current PACA plaintiffs. Thus, as a threshold issue, LIB strongly disputes that the 596 Property is a PACA asset. Nor can any proceeds from the sale of the 596 Property constitute PACA assets. The closing of the sale of the 596 Property is scheduled for

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

2 PARK AVENUE, NEW YORK, NY 10016 • TEL 212.592.1400 • FAX 212.592.1500 • www.herrick.com

this week, and it is the proceeds of that sale that Mr. Brown seeks to impound, notwithstanding that there is absolutely no basis to claim that the proceeds are PACA assets covered by the Court's prior consent injunction and agreed order (the "PACA Claims Order").

Mr. Brown has cited extensive case law where courts have found various assets acquired with PACA proceeds constitute PACA trust funds. Missing from his letter, however, is any proof—or indeed any allegation—that the 596 Property was indeed acquired with PACA proceeds. Rather, without setting forth any proof, he asserts in conclusory fashion that the PACA plaintiffs in this action have a strong likelihood of prevailing on their contention that the 596 Property is a PACA asset. Based on nothing more than his unsubstantiated assertion and no evidence, he asks this Court to impose the extraordinary remedy of directing injunctive relief against a party that is not a defendant in this action and that was not even served with a copy of his request. As discussed below, Mr. Brown cannot satisfy the standard for the grant of a preliminary injunction under the law of the Second Circuit. "For the last five decades, this circuit has required a party seeking a preliminary injunction to show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Similarly, his request for pre-judgment attachment fails to satisfy due process standards.

As an initial matter, a party seeking a preliminary injunction must show evidence of damage that cannot be rectified by financial compensation; monetary loss alone is insufficient. *See Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010). On this basis along, Mr. Brown should be denied his request for a preliminary injunction. Furthermore, there is no likelihood of any other type of harm. First, the proceeds of the sale of the 596 Property are not PACA trust assets available to satisfy the PACA claims of the plaintiffs here. So, there is no harm (irreparable or otherwise) that could be sustained by the PACA plaintiffs if Brooke Enterprises is not enjoined from disposing of the sale proceeds as it sees fit. Second, we project that there will be sufficient funds here to satisfy PACA claims in any event. Even if tangible assets must be liquidated to satisfy PACA claims in this case, Mr. Brown has not established—or even alleged—that there is or will be any insufficiency in the PACA assets.

The facts to date tend to show that the PACA claims in this matter are likely to be satisfied in full. LIB believes that the total PACA claims in this case are likely to be in the range of $1.1 - $1.2 million. To date, our firm is holding approximately $309,000 in separate escrow accounts for LIB and Suffolk, in accordance with the PACA Claims Order. As Mr. Brown is also aware, our firm has also sent demand letters seeking the recovery of an additional approximately $540,000 to all known account debtors of LIB and Suffolk. Moreover, LIB has received an offer from the landlord at the William Street location to settle claims against it, and Suffolk has received an offer for the Suffolk site for the sale of its assets. The amounts of these offers, together with the funds currently in escrow and the projected collectable accounts receivable will be substantially more than sufficient to pay all PACA claims in full. Those facts

strongly rebut any contention that the PACA plaintiffs face any risk of irreparable harm or injury.

With respect to the likelihood of success on the merits prong, as set forth above, and in the Hoey affidavit, there is clearly a dispute as to whether the 596 Property is a PACA asset. On that issue alone, Mr. Brown has failed to establish a likelihood of success on the merits. On the one hand, Ms. Hoey's affidavit sets forth specific facts as to why the 596 Property is not a PACA asset; contrast that with Mr. Brown's unsupported and non-specific claim of a likelihood of success that a building purchased some 28 years ago with family funds could constitute a PACA asset.

On the balance of hardship prong, Brooke Enterprises clearly will suffer substantial prejudice if the funds from the sale of the 596 Property are impounded and subject to the PACA process. As set forth above, Mr. Brown has not established any specific or non-conjectural harm faced by the PACA plaintiffs, so it is impossible for him to establish the prejudice they will suffer by denying the relief he has requested. The balance of the equities also strongly favors LIB. As set forth above, LIB and Suffolk believe that all of the PACA claims will be paid in full. Under those facts, there can be no strong argument on the equities in favor of freezing the assets of a non-party to this litigation.

Finally, the public interest strongly disfavors the relief requested by Mr. Brown: he seeks what is effectively an *ex parte* order; without notice and without even serving the target of his demand, Brooke Enterprises, which is represented by other counsel. Although Congress enacted PACA to protect the legitimate rights of produce producers and shippers, in doing so it did not abrogate due process or other rights established by federal law. More than 40 years ago, the Supreme Court ruled that pre-judgment orders of attachment were invalid unless the defendant had notice and an opportunity to be heard. *See Fuentes v. Shevin*, 407 U.S. 67 (1972). In this case, plaintiffs seek the imposition of that remedy without such notice or a hearing, and in the face of clearly disputed facts about whether there is any entitlement to such relief.

Respectfully submitted,

Robert Rattet

cc: Gregory Brown, Esq.

Encls.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHIQUITA BANANA NORTH AMERICA, LLC,
DOLE FRESH FRUIT COMPANY, S. KATZMAN
PRODUCE INC., and KATZMAN BERRY CORP.

Plaintiffs,

- against -

LONG ISLAND BANANA CORP., SUFFOLK
BANANA CO., INC.. and THOMAS J. HOEY,

Defendants.
-----------------------------------------------------------x

Case No. 2:14-cv-00982-ADS-AKT

**AFFIDAVIT OF YOLANDA HOEY**

STATE OF NEW YORK )
                  ) ss.:
COUNTY OF NEW YORK )

YOLANDA HOEY, being duly sworn, deposes and says:

1. I am the acting President and Owner of Long Island Banana Corp. ("LIB") and Suffolk Banana Co., Inc. ("Suffolk"), and the sister of Thomas J. Hoey, Jr. Unless otherwise stated, I have personal knowledge of the facts and circumstances set forth herein. I submit this Affidavit in support of the letter written by counsel to LIB and Suffolk opposing the request made by plaintiffs in the action captioned above to require the proceeds of sale of a property located at 596 Merrick Ave., Lynnbrook, New York (the "596 Property") be deposited into the PACA escrow accounts established pursuant to this Court's orders.

2. The 596 Property was acquired as part of the transaction by which LIB was acquired from its prior owners in 1985. However, title to the 596 Property was taken in the name of Brooke Enterprises, a separate New York corporation, which has remained the holder of that property to this day. At that time, the sole source of funds used for the acquisition of LIB's business, including the 596 Property, were personal resources of members of the Balducci family, the Hoey family and Tom Fitzsimmons, who were then the partners in the business

HF 9108286v.2

3. Over time, the Hoey family acquired the interests of the Balducci family and Mr. Fitzsimmons, and Thomas Hoey, Jr. is currently the sole shareholder of LIB and Brooke Enterprises.

4. LIB operated its banana business at the 596 Property until 1990 or 1991, when it moved its business to premises located at 28 William Street, Lynbrook, New York, which is around the corner from the 596 Property. The 28 William Street premises is owned by members of the Balducci family. Since 1991, the 596 Property has not been used in the LIB business.

5. For more than 25 years, the 596 Property has been leased to independent tenants; most recently the property was vacant. In 2014, Brooke Enterprises entered into a contract of sale of the 596 Property with a buyer who is wholly unrelated to LIB, Suffolk Banana, Thomas Hoey, Jr. or any other member of the Hoey family. That sale is scheduled to close on March 27, 2014.

Based on all of the foregoing, I respectfully request that the Court decline to require that the proceeds of sale of the 596 Property be deposited into the PACA escrow accounts established pursuant to this Court's orders.

_____
YOLANDA HOEY

Sworn to before me this
27th day of March, 2014

_____
NOTARY PUBLIC

ROSE E. HOEY
Notary Public State of New York
NO. 01SE6023657
Qualified In Rockland County
Commission Expires April 26, 20 15

2