UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

CHIQUITA BANANA NORTH AMERICA, LLC,     Case No. 2:14-cv-00982-ADS-AKT
DOLE FRESH FRUIT COMPANY, S. KATZMAN
PRODUCE INC., and KATZMAN BERRY CORP.

                                        Plaintiffs,

              - against -

LONG ISLAND BANANA CORP., SUFFOLK
BANANA CO., INC., and THOMAS J. HOEY,

                                       Defendants.

-----------------------------------------------------------------x

**BENCH MEMORANDUM REGARDING THE ISSUES OF WHETHER
BROOK ENTERPRISES, LTD CAN BE ADDED AS A DEFENDANT LIABLE
UNDER PACA, AND WHETHER PROCEEDS OF THE SALE OF 596
MERRICK ROAD, LYNBROOK, NEW YORK CONSTITUTE PACA ASSETS**

        This bench memorandum addresses the issue of whether proceeds from the sale of the real property at 596 Merrick Road, Lynbrook, New York (the "Property"), which is owned by Brook Enterprises Ltd. ("Brook"), constitute assets subject to the trust provisions of Section 5(c) of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c) ("PACA"), where Brook is not a party to the above-captioned case commenced by certain PACA creditors (the "PACA Plaintiffs") asserting PACA claims against Long Island Banana Corp. ("LIB"), Suffolk Banana Co., Inc. ("Suffolk"), and Thomas J. Hoey ("Hoey," and collectively with LIB and Suffolk, the "PACA Defendants"), the sole owner of LIB, Suffolk and Brook.

**BACKGROUND**

        LIB and Suffolk are in the business of purchasing un-ripened bananas, ripening them, and selling the ripened bananas to customers throughout Nassau and Suffolk counties. On February 14, 2014, the PACA Plaintiffs commenced this action to enforce the trust provisions of PACA, and the Court on the same day entered a temporary restraining order prohibiting the

dissipation or alienation of any assets of LIB or Suffolk and their related entities pending a hearing on the PACA Plaintiff's motion for a preliminary injunction. The parties resolved the preliminary injunction motion and other issues pursuant to a Consent Injunction and Agreed Order Establishing a PACA Trust Claims Procedure (the "PACA Claims Order"), which the Court entered on March 8, 2014.

The PACA Claims Order provides, in relevant part, the following: (i) LIB and Suffolk consent to a preliminary injunction; (ii) LIB and Suffolk acknowledge that perishable agricultural commodities and inventory, receivables and proceeds therefrom are PACA trust assets in which PACA creditors have a beneficial interest; (iii) the PACA Plaintiffs reserve the right to assert that other assets are PACA assets, including furniture, fixtures, equipment and real property; and (iv) LIB and Suffolk and their agents and representatives are restrained and enjoined from transferring and dissipating any assets of LIB and Suffolk.

Brook, wholly owned by Hoey, is the owner of the Property, which is currently under contract of sale with a closing to occur shortly or which has already occurred. The Property was purchased on June 15, 1986 by Brook. LIB's business moved to premises located at 28 William Street, Lynbrook, New York owned by 28 William Street Corp. during 1991. The Court should be aware that 28 William Street Corp., in violation of this Court's Order of February 14, 2014 utilized self-help in seizing the premises.

The PACA Creditors have asserted that, because the Property belongs to an entity affiliated with one or more of the PACA Defendants, the Property is a PACA asset, and the proceeds from the sale of the Property must be deposited into the escrow accounts established pursuant to the PACA Claims Order. The Complaint asserts PACA liability for sales made

2

between December 3, 2013 and January 28, 2014, or long after the acquisition of and payment for the Property.

## PACA BACKGROUND

Congress enacted PACA in 1930 to regulate the sale of perishable agricultural commodities and amended the statute in 1984 to provide increased protections to produce suppliers, particularly by imposition of a "non-segregated floating trust" on the perishable agricultural commodities and their derivatives (typically receivables and proceeds generated by the commodities):

> Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

A PACA trust consists of "a single, undifferentiated trust for the benefit of all sellers or suppliers of Produce." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 286 (2d Cir. 1996). Trust assets may be commingled with non-trust assets without defeating the trust. *A&J Produce Corp.*, 542 F.3d 54, 57 (2d Cir. 2008). PACA trust beneficiaries enjoy a higher priority than other creditors to satisfy unpaid claims from trust assets, including secured creditors. *Id.* at 58. In addition, a person "who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." *Cooseman Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 705-06 (2d Cir. 2007).

## **WHETHER BROOK IS LIABLE UNDER PACA**

The recent case of *Hop Hing Produces Inc. v. X&L Supermarket, Inc.*, 2013 WL 1232948 (E.D.N.Y. Mar. 26, 2013), is instructive on the issue of whether Brook, a third party, may be subject to PACA liability based on its affiliation with a PACA defendant. In *Hip Hong*, a PACA creditor ("creditor") commenced a PACA action against a supermarket (X&L) and certain individual officers of X&L, and sought leave to amend its complaint to add three corporate defendants, including the parent of X&L (parent) and the landlord ("landlord") of the premises occupied by X&L. At issue also was whether a $414,000 security deposit paid by the parent to the landlord was a PACA asset that could be used to satisfy the creditor's PACA claims.

The creditor sought to add the landlord as an alter-ego of X&L on the basis of the parties' "complex and inextricable commonality of ownership and interest." *Hip Hong* at *1. There was, in fact, much overlap in the group of entities and individuals involved in the matter, with overlapping officers of X&L and the landlord, and the landlord's guaranty in favor of X&L and its parent. Notwithstanding the undisputed fact that there was a fair amount of overlapping interests between the landlord and other parties, the court in *Hip Hong* declined to add the landlord as a defendant liable under PACA because the plaintiff had failed to allege sufficient facts to rebut the presumption of separateness afforded to related companies. *Hip Hong* at *6 (citing *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir. 2010)). In this case, there have been bare allegations of common ownership of LIB, Suffolk and Brook. Without more, it is unlikely that veil-piercing or alter-ego theories could be sustained by the PACA Plaintiffs.

The court also rejected the creditor's argument that the landlord should be liable under PACA for its receipt of the security deposit from X&L's parent. "In analyzing whether a

4

third party is liable for PACA debts, courts undertake a two-part analysis: 1) whether the transfer of assets was a breach of the PACA trust, and 2) whether the third party transferee should be liable for the breach." *Hip Hong* at *7 (internal citations omitted). With respect to the first prong, a court must determine whether the transferred assets were PACA asset as an initial matter. In that regard, as described in greater detail below, courts in the Second Circuit apply the *Kornblum* test: (i) whether a PACA trust existed at the time of the transfer, (ii) even if a PACA trust existed, whether the property was acquired with PACA trust assets, and (iii) even if a PACA trust existed and the property was acquired with PACA assets, whether the PACA debtor thereafter paid off all unpaid sellers in full prior to the transaction involving the suing PACA creditors, thereby terminating the trust. *Kornlum*, 81 F.3d at 287. The second prong requires the court to determine if a PACA trustee transferred the property in breach of a PACA trust *and* that the transferee had notice of the breach. *Hip Hong* at *8.

Brook is a third party, whose asset (the Property and the proceeds of the sale thereof), the PACA Plaintiffs seek to bring into the PACA trust. The transfer at issue here is the acquisition of the Property by Brook in 1985. Thus, under *Hip Hong*, the Court must determine whether a PACA trustee transferred the Property to Brook in breach of a PACA trust and Brook had notice of the breach. There is no allegation here that the entity that transferred the Property to Brook in 1985 is a PACA debtor. Even if there were allegations to that effect, as explained below, the Court must determine if the Property is a PACA asset. Moreover, even if all the foregoing could be shown, there is no allegation that Brook had notice that the transfer of the Property to it was a violation of a PACA trust.

In this case, if the PACA Plaintiffs wish to impose PACA liability against Brook, they must add Brook as a defendant. Under these circumstances, and in light of the *Hip Hong*

5

case, the PACA Plaintiffs would have to either (i) prove that Brook is an alter-ego of one or more of the PACA Defendants, or pierce the corporate veil between Brook and one or more of the PACA Defendants, or (ii) demonstrate that the transfer of the Property to Brook was a breach of the PACA trust and that Brook had notice of such breach. Given that there are only bare allegations of a close relationship between Brook and Hoey, and that the Property was acquired by Brook more than thirty years ago, there is very little likelihood that the PACA Plaintiffs would be successful if they sought to add Brook as a defendant liable under PACA.

## WHETHER THE PROPERTY AND PROCEEDS FROM THE SALE THEREOF CONSTITUTE PACA ASSETS

Even if the PACA Plaintiffs were successful in piercing the corporate veil or proving that Brook is an alter-ego of one or more of the PACA Defendants, the Property (and the proceeds of the sale thereof) would not be available to satisfy PACA claims if Brook can show that the Property is not a PACA asset.

As noted above, courts in the Second Circuit conduct a three-prong analysis. To demonstrate that certain store and office units are not PACA assets, the debtor bears "the burden to establish either that (1) no PACA trust existed when the Units were purchased; (2) even though a PACA trust existed at that time, the Units were not purchased with trust assets; or (3) although a PACA trust existed when the Units were purchased and the Units were purchased with trust assets, [the debtor] thereafter paid all unpaid sellers in full prior to the transactions involving the Creditors, thereby terminating the trust." *In re Kornblum & Co., Inc.*, 81 F.3d 280, 287 (2d Cir. 1996).

In *Hip Hong*, the court concluded that no PACA trust existed at the time of the transfer of the security deposit because X&L (the PACA debtor defendant) did not commence operations until after the security deposit was paid *Hip Hong* at *7. With respect to whether a

6

disputed asset was purchased with non-PACA assets, an affidavit alone is insufficient. *See Ger-Nis Int'l, LLC v. FJB, Inc.*, 2008 WL 2600074 at *5 (S.D.N.Y. June 25, 2008).

In this case, Brook or the PACA Defendants would bear the burden to demonstrate any of the three prongs set forth in *Kornblum* by presenting evidence sufficient to establish any of the three scenarios that bring an asset outside of PACA.

At the hearing scheduled by this Court for April 7, 2014, the PACA Defendants will present evidence that will establish that (1) LIB and Brook are now, and at all times have been, separate corporate entities, and that there is no basis to pierce the corporate veil or treat them as alter ego entities; (2) that the 596 Property previously owned by Brook was not purchased utilizing any PACA proceeds or PACA assets, (3) when Brook was acquired, there were no unpaid PACA creditors at LIB or Suffolk, and (4) when Thomas Hoey, Sr. transferred Brook to Thomas Hoey, Jr., there were no unpaid PACA creditors at LIB or Suffolk.

## **CONCLUSION**

For the reasons set forth above, the PACA Defendants respectfully request that this Court rule that the proceeds of the 596 Property do not constitute PACA proceeds and that such funds not be held in the escrow accounts established by prior orders of this Court in this action, and that the Court grant such other relief as may be just and proper.

Dated: April 6, 2014  
       New York, New York

Respectfully submitted,

HERRICK, FEINSTEIN LLP  
2 Park Avenue  
New York, NY 10016  
Telephone: (212) 592-1400  
Facsimile: (212) 592-1500

By: /s/ Robert L. Rattet  
     Robert L. Rattet

7

              Attorneys for Long Island Banana Corp.,
              Suffolk Banana Co., Inc. and Thomas Hoey